Number 181637 Garrett Calandro v. Sedgwick Claims Mgmt. Services. Mr. Hulley? Good morning, your honors. David Hulley for the Appellant. May I reserve two minutes? Yes, you may. Thank you very much. Good morning, your honors. Even with the differential standard of review on this record, the determination that Sedgwick made adequate efforts toward settlement cannot stand. One clear failure in forcing the injured party to wait over nine months to two years after liability was clear to receive any offer of settlement wants more whether those offers were reasonable at the time. When do you say liability was clear? I say that for a couple of reasons, your honors. When do you say it became clear? Because we have a finding by the court below that not much time passed here. I would disagree with the court's findings. Judge Sarris found that liability was reasonably clear as to the pre-death conscious pain and suffering harm that occurred. And with that, she does not put a time frame on which she found that the liability was reasonably clear at that time. So we are left to what the record has. The record provides to us at least one, two, three, four, five, six different times in which liability can be deemed reasonably clear. You're talking just about liability on conscious pain and suffering? That's correct, your honors. Because the district court, as I understand it, found that liability was never clear on the wrongful death claim. I agree with you. Okay. There is an argument that can be made that at some point they did determine that the wrongful death claim was also reasonably clear based on the trial counsel's reports to Sedgwick, but those came in 2014, not prior. And for the record appendix, your honor, to determine when liability was reasonably clear, one of the things that we can look at is record appendix 389 through 98, and that's May 1st of 2013. And at that particular time, the counsel in Sedgwick was in complete possession of plaintiff's expert disclosure. What date do you say that? Because the court specifically found that they didn't get it until 2014. That's correct. And that's what the court found, but that's wrong, your honor. And are you basing that solely on the note written on April 25, 2013? There's more than that. And what is it other than that note? Other than the record appendix 389 through 98, it is the complete opinion of Dr. Jennison, which was included in the plaintiff's offer of proof, which the plaintiff passed, which was defended by the other side they lost. At that point, at the submission of the plaintiff's offer of proof to the superior court, that offer of proof contained records and expert opinions and completion. But the court found that the offer of proof, it was the note of April 25, says plaintiff's offer of proof gives some insight into the plaintiff's theories and expert reports. It doesn't say that Sedgwick received the expert reports themselves, it just says they received some insight by virtue of the offer of proof. And that's incorrect according to what she wrote. If we go back to the record, the documentary evidence supports record appendix 389 through 98 and record appendix 3, page 11 and record appendix 3, page 78. There are, the complete expert opinion was provided in the offer of proof and to which the company acknowledges receipt of it and describes it within their internal communications. That was marked as exhibit number 78 at trial and marked as, yes, exhibit number 73 at trial was the... Did Sedgwick at that time have the benefit of its own experts review of those records? No, your honor. There was a suggestion by their investigator early on in the case that they do obtain an opinion from a medical professional. There's also a note in the record that says that they were going to get nurses involved to review the record. No, but I'm just asking, you're attaching great significance to this May 13 proffer. All right. Now, I would think that the force of such a proffer, its impact upon proof of liability, normally would depend upon the insurer having that proffer evaluated by a medical expert on its behalf. Correct. But they didn't do that. They chose not to do that. They waited until months, a couple months before trial to go and get an expert opinion only on a piece of causation to death. We're still dealing with the non-death pain and suffering, harm that occurred pre-death. And what do you say to Judge Saris' observation that this proffer really didn't change much because several months after the proffer, you repeated the very same settlement offer that you had made before these materials were available? I have two comments to that. One is Judge Saris either missed or was mistaken about the value of that expert opinion. She thought that the subject did not have the expert opinion until 2014. That's not true. She found that as a fact. And we can only go behind that if you can show us that that finding is clearly erroneous. I'm not exactly sure that that's the only finding that you find clearly erroneous. There are at least one, two, three, four, five in her findings of fact that are clearly erroneous based on the documentary evidence. But stick with this one. We're talking about the date where it became obvious with regard to the And that factual finding is supported by Kenny's testimony that he thought he received the opinion in May of 2014. And then Blair has a July 7, 2014 report to Hartford, the main insurer, stating that Kenny received it in April of 2014. And then we've got the note. And now you've told us that Exhibit 78 and the transcript pages contain documents which suggest otherwise. That's correct, Your Honor. So what it requires us to do is to look at those documents and decide that it's so unambiguous that those were actually received by them that it was clearly erroneous to disbelieve the contemporary notes otherwise and the testimony otherwise. That's quite a heft. Not necessarily, Your Honor. It is that the document, documents have no memory loss. People do. Judge Sears relied on oral testimony which was incorrect according to the documentary evidence. There's more than just that May date. It goes as far back as December 5, 2011 in the record appendix. I'm sorry. You can finish that point. December 5, 2011 in the record, they say that liability is an issue. And May 13, 2012, Record Appendix 3, 371, the investigative report says that liability is an issue. May 1, 2013, we just covered with the expert report and the offer of proof. And therefore... Thank you, counsel. You're welcome. Good morning. May it please the Court. My name is Alan David. I represent Sedgwick. I'm going to pick up where Mr. Hoey left off. Judge Sears did something unusual in this case by treating the wrongful death claim, which admittedly has two components, a pain and suffering claim and a death component, by bifurcating them and treating them separately. At the end of the day, it didn't matter because she found that reasonable offers had been made. I don't think there is any serious argument that on the death component, the biggest part of the claim, that liability was never reasonably clear, meaning no offer was ever required. The only issue, as she saw it, was whether liability was reasonably clear on the conscious pain and suffering claim. That sort of popped up in the middle of the trial when Mr. Kenney was testifying about his valuation and he evaluated the range of $300,000 to $500,000 and said, I was putting most of it on the pain and suffering claim because I didn't think there was any causation on the death. Judge Sears took that as, okay, a separate claim that may be settlable or an obligation to settle. I think to describe that as an unorthodox approach is an understatement. Cases are settled as a case. In these types of cases, ordinarily, it's the death claim that drives the case. We can look at the jury verdict, the underlying case here. Somebody gets in a car accident. It's clear the car is totaled, but it's ambiguous as to whether they had any injuries. You're saying because it's ambiguous as to injuries, the auto insurer could offer nothing, even if they had a picture of the car at the wrecking lot. I think under those circumstances, that's probably true, Your Honor. Is there any case that says that? For any case where you're dealing with a number of covered claims, some might be stronger than others, I don't think there is any obligation on an insurer's part to settle piecemeal. Well, no, they'd be moving to settle the whole case. Pardon me? They'd be moving to settle the whole case for that amount. Okay, absolutely, you'd be moving to settle the whole case. Sure, that's not moving. They'd say, we'll settle the whole case for the cost of your car. We would say, well, that was reasonable. You knew the car was totaled, but you offered it, and you didn't offer anything on the physical injuries because that wasn't clear, so you satisfied the statute. That's right. Well, that's all she's doing here. She's saying whether she was right or not. We get bogged down in this issue of when was liability reasonably clear on the conscious pain and suffering claim. She doesn't describe a date. I think we can place it because both parties and Judge Saras were proceeding on the assumption that it was when… Well, you don't need a date. You just need it not long prior to 2014, spring of 2014, right, when an offer was made. Well, I think all the parties placed the liability being reasonably clear at the time of the expert disclosure. The plaintiffs say that was in May of 2013. Sedgwick said it was not. It was May of 2014. There was testimony to that effect. Excuse me, the expert disclosure was made in the proffer to the medical mediation panel, wasn't it? There was a proffer to the medical malpractice tribunal. And that was in May of 2013, and that's the date in which the appellants counseled. That's the date he's directed us to, and there's no question about that date. I mean, that's a formal proceeding, and there is a record of that proceeding. We know what date that proceeding occurred. Your Honor is correct that there is no question about the date, but there is a question about what the substance of that disclosure was. That was ever in evidence in the trial, and the judge found that the full expert disclosure wasn't made until May of 2014. And that is not only not clearly erroneous, it's supported by a lot of evidence. Now, that's what you've used like almost half your time, and the point here is why the other side says that her finding, that they did not receive the expert report until 2014 spring. They say that's clearly erroneous because there are two documents, at least in the record, including Exhibit 78, including transcript pages 388 to 398 or something like that, the record will reflect, that irrefutably rebut that. What is your response to that point? It does not irrefutably rebut it. What we have is a note from the claims examiner saying this throws some light on the claim. He says he's not referring to that note. He says he's referring to a copy of the, I think, the offer of proof that has the expert report attached right to it. We don't know that. The offer of proof to the Medical Malpractice Tribunal wasn't offered in evidence at the trial. What we have, the expert disclosure, is a formal Superior Court expert disclosure. The certificate of service is dated April 27, 2014. Attached to it are a number of reports, including one from the primary medical expert that is dated sometime in 2012. Now, what was submitted to the tribunal, whether it was the same thing, a different thing, we don't know. The judge wouldn't accept the fact that, wouldn't indulge the assumption that it was the same thing. We know when the formal disclosure was made, and that was in late April, early May 2014. So you're simply saying if we go look at those pages of the transcript, we're not going to find irrefutable proof that the offer of proof was received by your client in 2013? I think you may find that the offer of proof was received. I'm sorry. What that offer of proof was, I don't think you'll see. I'm sorry. Okay. That is an important distinction, and a distinction that Judge Saris thought was important and on which she bases her opinion. So from that assumption, two things flow. On the death claim, no offer was ever required. They had an expert report saying there's no causation. As a matter of law, liability cannot be reasonably clear on that claim. As of May 2014, let's assume that liability on the pain and suffering claim is reasonably clear. The trial judge found that to the extent liability was reasonably clear, reasonable offers were made at key stages of the litigation. Now, this case was valued at between $300,000 and $500,000. Offers were made starting in February 2014. There was a joint offer with the co-defendant of $275,000. In June of 2014, there was another joint offer of $300,000. You were at the low end of the valuation range. The co-defendant settles for $250,000 in early July, and Sedgwick, through defense counsel, offers another $250,000 plus in mid-July, which brings the total amount of settlements and offers to the high end of the settlement range or value range. I think the judge was more than warranted in finding that under these circumstances, reasonable offers were made, both in terms of timing and amount. I have two minutes, but unless the Court has any more questions, I'm perfectly happy to sit down. Thank you. Thank you. May it please the Court. For the record, the expert opinion that was submitted to the offer of proof was marked as Exhibit No. 79 in the bad faith trial and was before Judge Sarris. But that's not the issue. No, I was just clearing up that one issue about is it in the record. The other part is the docket entry of the offer of proof is in the record as well, and Sarris takes note of it, and she could have taken judicial notice of it, which I can't remember whether she did. Also, the offer of proof was marked for identification purposes at that trial. Was the offer of proof with an attached expert report admitted at trial as an exhibit? Just the expert report. Well, then that's not going to get you what you need. You need to show that the expert report was furnished with the offer of proof in 2013. It doesn't do you any good to show that there was an expert report. The other side concedes there was an expert report. They don't concede that that expert report was before Judge Sarris at the trial. They concede that it was received in 2014. Before her or not really is the issue. The question is was it before the insurer, before Sedgwick? Oh, yes, Your Honor. I can answer that for you. Record Appendix 3, page 78, and Record Appendix 3, page 11, Mary Blair's notes acknowledge receipt of the plaintiff's offer of proof and a description of it and her expert opinion at that time. And she goes into great detail about receipt of that and now has an insight into the plaintiff's case. Are you now back to the first question that I asked that started this whole thing, which was simply the reference to her note that said that the offer of proof gives some insight into the plaintiff's theories and expert reports? No. There's some other document? There's more to that. Okay. Thank you. I'm sorry. Can I add one last comment if it will help the Court? 20 seconds. Sir. Exhibit number 55, Record Appendix 3, page 115 and 116, there's a reference by the judge that Mary Blair and Sedgwick were no longer involved in the post-verdict offer of $1 million. That is incorrect. Now you're on to a new issue. Thank you. Okay. Sorry.